IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DR. EDWIN HASSON,          :
              Plaintiff,   :
        v.                 :   Case No. 3:06-cv-29-KRG-KAP
GLENDALE SCHOOL DISTRICT,  :
              Defendant    :

## Report and Recommendation

### Recommendation

Plaintiff Edwin Hasson filed a complaint alleging that he was dismissed from his position as superintendent of defendant Glendale School District because of his age, ethnicity, and disability.  Only the Title VII national origin claim remains.  Defendant's motion for summary judgment on that claim, docket no. 17, should be granted, and the matter dismissed.

### Report

I.

Plaintiff Edwin Hasson is a Muslim of Lebanese descent. He alleges that he was fired from his position as superintendent of the defendant Glendale School District in 2003, in the wake of anti-Arab sentiment after the terrorist attacks of September 11, 2001.  Hasson also alleged that he was discriminated against because of a disability (manic depression) and because of his age (52 in late 2003), but those claims were dismissed for failure to state a claim: plaintiff never alleged anyone responsible for his dismissal knew or even should have known that he was manic depressive (plaintiff alleged to the contrary that he was in

perfect health), and although plaintiff was 52 when fired, he was not replaced by a younger individual.

Glendale School District seeks summary judgment on the ethnic discrimination claim as well.  The standard for summary judgment is correctly set out by both parties and I do not need to repeat it here; the statement of facts is of course taken by reading the record, where disputed, in the light most favorable to plaintiff as the nonmoving party.  See Doe v. Centre County, 242 F.3d 437, 446 (3d Cir.2001).

Hasson was born in the Glendale area, and graduated from high school there.  Hasson depo. at 14.  Hasson graduated from Penn State in 1973, and was a teacher in the Tyrone School District in Blair County and then a school principal in the Southern Huntingdon School District in Huntingdon County.  In 1993 Hasson became superintendent of the Conemaugh Valley School District in Cambria County.  Hasson was hired as superintendent by the Glendale School District in Cambria County in August 1997, for a three year period ending in June 2001.  Hasson was re-appointed by the Glendale School District Board in July 2000 for a three year period from July 2001 to June 2004; the employment contract for this period was approved at a Board meeting on October 2, 2001.

In July 2002, Glendale School District suspended Hasson without pay, charging him with numerous instances of personal misconduct and professional errors.  Hasson, represented by

2

counsel, attended five days of hearings on the charges between October 2002 and April 2003. The hearing officer, Stephen S. Russell, Esquire, recommended that Hasson be fired. Russell found several instances of professional misconduct ranging from minor (smoking in the school building, use of the school's internet connection to visit numismatic websites) to major (failing to attend meetings of school superintendents, abusing his position to harass disfavored teachers and administrators.) Russell also found several instances in which Hasson had improperly used his position for financial gain, from relatively minor but still job-ending offenses (buying music for Hasson's personal use with school funds on the pretext that the music was under consideration for use at commencement, submitting vouchers to be reimbursed for travel to events Hasson did not attend) to major financial misconduct (having his children attend the Glendale High School without paying tuition even though they were not residents of the district.) The most significant act of financial misconduct found by Russell was Hasson's misrepresentation of the terms of employment contract approved on October 2, 2001: Hasson allegedly made several unilateral changes in the proposed contract that increased his compensation significantly, which he actively concealed from the Board. On November 4, 2003, the Glendale School District board received Russell's report and voted unanimously to fire Hasson, effective November 7, 2003.

Hasson denies that he is guilty of any of the twenty five allegations of misconduct. He relates that he was always subjected to ethnic slurs growing up in the Glendale area, Hasson depo. at 14-17. Hasson's wife and children were subject to ethnic slurs during his tenure as superintendent, although Hasson did not learn about some of the instances of name-calling until after his dismissal. Hasson depo. at 19-25. More serious were threats received by Hasson's wife and an assault on one of his sons, which threats and attack were described as motivated by Hasson's ethnicity. Id. Hasson personally could recount only two episodes of ethnic slurs against him, both in the 2001-02 school year. The first instance took place sometime after the attacks of September 11, 2001: Hasson was talking to three teachers, two of whom were officers in the local teachers' union, and in response to a directive from Hasson, one of the teachers replied to the group at large that he would comply because "I don't want to make Osama mad," to which another responded "you mean Yassir, don't you?" This provoked laughter at Hasson's expense. Hasson depo. at 25-26. The second episode took place later in the year with the same three teachers, and other than the use of the name Osama, Hasson could not even remember what was said. Hasson depo. at 27-28. Hasson does recall reporting these incidents to at least two school board members at board meetings right after they happened, but that the board members just brushed off the comments made in the first

4

incident as immaturity on the part of one of the teachers.  Hasson could not elaborate on the second incident.  Hasson depo. at 30-31. On a third occasion a teacher made the comment while Hasson was within earshot "that guy thinks he's King Farouk," which comment Hasson believed was directed at him.  Hasson himself was not sure what the teacher said and describes the comment as made to another teacher, which Hasson happened to overhear.  Hasson depo. at 32-33. The teacher who made the comment later retired and became a member of the school board which fired Hasson.  Hasson believes that particular teacher had a distant relative who was killed in the World Trade Center attack on September 11, 2001.  Hasson depo. at 41-42.  Hasson's only other pieces of relevant evidence were his belief that some members of the school board were in the Ku Klux Klan, and his impression that "everything changed" after September 11, 2001, and that board members had "hate in their eyes."  Hasson depo. at 36, 42, 47.

II.

A plaintiff employee may establish a <u>prima</u> <u>facie</u> case of national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e-2(a)(1), by evidence showing that he is a member of a group protected by Title VII (any specific national origin or ethnic identity is sufficient, <u>see</u> <u>Bennun v.</u> <u>Rutgers State University</u>, 941 F.2d 154, 172 (3d Cir.1991), <u>cert.</u>

5

<u>denied</u>, 502 U.S. 1066 (1992)), that he was qualified for his job[1], that he suffered an adverse employment decision, and that the decision was made under circumstances giving rise to an inference of discrimination.   The employer defendant is then obliged to "articulate some legitimate, nondiscriminatory reason for the [adverse employment decision]."   <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 802 (1973).   If the employer does this, the inquiry proceeds to the third step:

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder to reasonably infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).

<u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

Whether one considers the record as being analyzed at the fourth element of the <u>prima facie</u> case, or at step three of the burden shifting paradigm is immaterial: the dispositive question is whether a factfinder instructed on the substantive law could

---

1.   Defendant asserts that because Hasson was discharged for misconduct he was not qualified for his job but when the adverse employment decision is termination for misconduct, the term "qualified" means possessing the minimal qualifications for the job under consideration.   Hasson was qualified for the job of superintendent.   The allegations of misconduct leveled by defendant should be analyzed as defendant's articulated nondiscriminatory reasons for Hasson's discharge.   <u>See generally</u> <u>Keller v. ORIX Credit Alliance, Inc.</u>, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc)(assuming an employee is qualified for purposes of <u>prima facie</u> case permits analysis of job performance at the third step of the paradigm.)

infer that discrimination motivated the defendant's decision.  The answer in this matter is a resounding no.

Hasson does not, by simply maintaining that he is not guilty of any misconduct, discharge his duty to present evidence that the employer's proffered reasons were a <u>post hoc</u> fabrication. If it is assumed for purposes of summary judgment that Hasson is not and never was guilty of any misconduct, that would mean that the Glendale School District erred in firing Hasson, not that it violated federal anti-discrimination laws in doing so.  <u>Keller</u>, 130 F.3d 1108-09 (federal courts do not weigh the soundness of an employer's decision, only whether it reflects discrimination.) Hasson thus fails to cast doubt on the Glendale School District's reasons under the first option described in <u>Fuentes v. Perskie</u>,

Hasson likewise does not satisfy the other option described in <u>Fuentes v. Perskie</u>, of rebutting the employer's nondiscriminatory reasons by showing pretext.  A plaintiff can prove pretext by presenting evidence that even if the incidents described by the employer happened, it was bias and not the incidents which really motivated the employer's decision.  Hasson does not show unlawful bias: aside from unsubstantiated and petulant accusations that board members were pedophiles or Klansmen, plaintiff offers only perhaps two anecdotes of ethnic slurs involving **subordinates**.  This adds up to no evidence of pretext because precedent, if not logic, makes it obvious that in

a wrongful termination case, unlike a hostile environment case, the relevant biases are those of the employee's superiors who were involved in the decision to fire plaintiff.  See Keller, 130 F.3d at 1111-12 (age-related comment by supervisor four to five months before discharge not probative of pretext); Wallace v. SMC Pneumatics, 103 F.3d 1394, 1400 (7th Cir.1997)(national origin-related comment by supervisor not probative of pretext because plaintiff was fired by a different supervisor).  Compare Aman v. Cort Furniture Rental Corp., 87 F.3d 1074, 1083 (3d Cir.1996)(statements by fellow employees and supervisors together probative of hostile environment).  In the third anecdote which involved a subordinate who later became a board member, plaintiff cannot even be sure what was said.

It is unnecessary to enter the thorny thicket of proving pretext when the employment decision is made by a committee which adopts the recommendation of a hearing officer.  In a more substantial case the parties could profitably debate whether the relevant decisionmaker was the hearing officer (who is not alleged to have been biased at all), or whether (since the decision of the Board was 9-0 to fire Hasson) plaintiff would have to show evidence that five or more members of the Board voted their biases instead of their judgment.  But Hasson offers nothing more than a general accusation that the community in which the defendant is located is pervasively discriminatory and that despite the highly detailed

8

accusations of misconduct supported by several days of evidentiary hearings, this atmosphere of discrimination must be the real reason for the Glendale School District's decision to fire him.  This does not suffice to create an issue of fact requiring trial.  In <u>Scott v. New Jersey</u>, 143 Fed. Appx. 443, 446 (3d Cir.2005), Judge Barry forcefully opined, in the course of affirming the grant of summary judgment to defendant in a Title VII hostile environment claim, that plaintiffs could not simply contend that it was a credibility issue for a jury where defendant alleged that some of plaintiffs' evidence of racial discrimination was fraudulent.  Glendale School District presents an even stronger legal case for summary judgment than that considered by the panel in <u>Scott</u>.  Hasson claims both that Glendale was always a hotbed of racism (which nevertheless hired and re-appointed him superintendent of its school district), and that everything changed after September 11, 2001 (because of three episodes of hostility by employees so insignificant that even in litigation Hasson could not recall what was said in two of them.)  It is logically impossible for Hasson to be right about both accusations, and the court need not weigh the credibility of the plaintiff's evidence of discriminatory motives: there simply is no such evidence.  Summary judgment must be entered for defendant.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: _____June 25, 2007_____          _____Keith A Pesto_____
                                            Keith A. Pesto,
                                            United States Magistrate Judge

Notice by ECF to counsel of record

10